**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Nicole Furnas,                                )
                                             )        CV 23-00529-TUC-RM (MAA)
       Plaintiff,                        )
                                             )
v.                                           )
                                             )
Tierra Luna and Sol Enterprises, LLC; et al.,  )        **ORDER**
                                             )
       Defendants.                       )
                                             )
_____      )

      Pending before the court is a motion for protective order filed by the corporate defendants ("the defendants") on November 14, 2025. Doc. 88. The plaintiff filed a response on December 5, 2025. Doc. 93.

      The defendants filed an untimely reply on December 18, 2025. Doc. 95; *see* LRCiv 7.2 (d). It was not accompanied by a motion for leave to file. Moreover, the court finds that the arguments in the reply do not change its analysis. The court does not consider the untimely reply.

      <u>Background</u>

      The plaintiff in this action, Nicole Furnas, lived in one of the defendants' apartments. Complaint, Doc. 1, p. 1. "As the lease term neared its end without a renewal offer, Furnas became afraid that [the defendants] would not renew her lease . . . ." Doc. 1, pp 1-2. One of the defendants' maintenance workers, the individual defendant since identified as Jesus Santos Caceres, "said he would have her lease renewed if she performed oral sex on him." Doc. 1, p.

2; Doc. 93, p. 3. "Feeling she had no other way to avoid losing her home, Furnas did so." Doc. 1, p. 2.

On November 20, 2023, Furnas filed a Complaint in this court claiming (1) sexual harassment in violation of the Federal Fair Housing Act, (2) discriminatory housing practices in violation of the Arizona Fair Housing Act, (3) negligence for failing to train and supervise, (4) assault, and (5) battery. Doc. 1.

In the pending motion, the corporate defendants seek a protective order precluding the plaintiff from using the deposition of Kevin Young to obtain contact information for one of their prior employees, Blaine Jacobson. Doc. 88. They argue that communicating *ex parte* with one of their prior employees would violate the Arizona Rule of Professional Conduct 4.2 as interpreted by *Lang v. Superior Ct., In & For Cnty. of Maricopa*, 170 Ariz. 602, 605, 826 P.2d1228, 1231 (Ct. App. 1992). Doc. 88, p. 1; *see also* LRCiv 83.2(e) ("The 'Rules of Professional Conduct,' in the Rules of the Supreme Court of the State of Arizona, shall apply to attorneys ... authorized to practice before [this court].").

"Rule 26(c) [of the Fed.R.Civ.P.]authorizes the district court to issue any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp*., 307 F.3d 1206, 1211–12 (9th Cir. 2002) (punctuation modified). "The Supreme Court has interpreted this language as conferring broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Id*.


Discussion

On November 13, 2025, the plaintiff deposed Kevin Young, a former employee of the defendant Transpacific. Doc. 88, p. 2. Young explained that another employee, Blaine Jacobson, "implemented policies for employee background checks, scheduled and implemented sexual harassment training, scheduled and implemented fair housing training, and oversaw drafting of the employee handbook, among other things." Doc. 88, p. 3. The plaintiff's counsel

asked Young for Jacobson's phone number, but the defendants' counsel objected.  Doc. 88, p. 3.  The defendants' counsel objected to the plaintiff's counsel making contact with a former employee who "implemented sexual harassment training, the employee handbook."  Doc. 93, p. 5.

The defendants argue in the pending motion that any *ex parte* communication with Jacobson would violate the Arizona Rule of Professional Conduct 4.2 ("ER 4.2").  Doc. 88, pp. 3-8.

ER 4.2 generally prohibits *ex parte* contacts with "a party the lawyer knows to be represented by another lawyer in the matter. . . ."  *Lang v. Superior Ct., In & For Cnty. of Maricopa*, 170 Ariz. 602, 604, 826 P.2d 1228, 1230 (Ct. App. 1992).  "The prohibition is intended to (1) prevent unprincipled attorneys from exploiting the disparity in legal skills between attorneys and lay people, (2) preserve the integrity of the attorney-client relationship, (3) help to prevent the inadvertent disclosure of privileged information, and (4) facilitate settlement."  *Id*.

If the party is an organization, *ex parte* contacts with a former employee are ordinarily permitted.  "Former employees are usually unaware of the corporation's legal strategies after employment is terminated and will usually have no access to privileged information while employed."  *Lang v. Superior Ct., In & For Cnty. of Maricopa*, 170 Ariz. 602, 606, 826 P.2d 1228, 1232 (Ct. App. 1992).  "And, while a former employee's statements to opposing counsel may be damaging to the corporation, they are no more so than the statements of a former employee who merely witnessed the liability-creating acts but did not commit them."  *Id*. (punctuation modified).  Moreover, "any movement away from informal discovery procedures will greatly increase the cost of litigation."  *Id*., p. 607, 1233.

However, the Rule prohibits *ex parte* contacts with a former employee "whose act or omission in connection with the matter may be imputed to the organization."  *Id*., pp. 604-605, 1230-1231.  "For example, if an employee hired to drive a truck is involved in an accident that occurs in the course and scope of employment, the fact that the employee leaves his or her

1   employment should not determine the propriety of *ex parte* communications." *Id*., p. 607, 1233.

2   On the other hand, *ex parte* contacts with a different former truck driver would be permitted

3   because that driver's acts or omissions did not cause the accident. In sum, "ER 4.2 does not bar

4   counsel from having *ex parte* contacts with a former employee of an opposing party where the

5   former employer is represented by counsel unless the acts or omissions of the former employee

6   gave rise to the underlying litigation or the former employee has an ongoing relationship with

7   the former employer in connection with the litigation." *Id*., p. 607, 1233.

8         In the pending motion, "Defendants ask this Court to enter a protective order precluding

9   contact with former Transpacific employees whose actions may be imputed to Transpacific."

10  Doc. 88, p. 7. Apparently, the defendants interpret the phrase "may be imputed to" to cover all

11  employees in a management position. They instructed Young not to answer questions about

12  Jacobson "because Mr. Jacobson was in a management role at Transpacific." Doc. 88, p. 3.

13  The court believes that the defendants' interpretation of the rule is too broad. At one point, the

14  *Lang* court did use the phrase "may be imputed to the organization" to designate when *ex parte*

15  contact would be prohibited. " *Id*., pp. 604-645, 1230-1231. Later in the opinion, however, the

16  *Lang* court cabined that statement by explaining that *ex parte* contact is prohibited where the

17  "acts or omissions of the former employee gave rise to the underlying litigation." *Id*., p. 607,

18  1233. And that appears to be the proper test here.

19        For example, if Jacobson created an employee training program that was exemplary in

20  all respects but a different employee negligently failed to give Caceres that training, Jacobson's

21  training program might be imputed to the organization as evidence of what that organization

22  believes the standard of care should be, but his acts or omissions did not give rise to the pending

23  litigation and *ex parte* contact with him would be permitted. *Ex parte* contact with the negligent

24  trainer, however, would not be proper. The trainer's acts or omissions would have given rise

25  to the underlying negligence claim.

26        On the other hand, if Jacobson was responsible for Caceres's training, then he was

27  responsible for seeing that Caceres received proper sexual harassment training (assuming this

28                                           - 4 -

1    is the standard of care) and his acts or omissions would have given rise to the underlying

2    litigation. And *ex parte* contact with him would be improper.

3         Furnas imagines a hypothetical employee "who trained Caceres, but failed to provide

4    sexual harassment training because the Corporate Defendants did not require such training."

5    She maintains that *ex parte* contact with that employee would be proper because "liability

6    would arise from the Corporate Defendants' failure to maintain and implement proper policies,

7    not the employees' actions." Doc. 93, p. 9. The court does not agree. A corporation acts, or

8    fails to act, through its employees. *Lois Grunow Mem'l Clinic v. Davis*, 49 Ariz. 277, 284, 66

9    P.2d 238, 241 (1937) ("It is elementary, of course, that a corporation acts only through its

10    agents, and it is also beyond question that an agent may only bind a principal within the scope

11    of his authority, actual or apparent. No citations are necessary to support these fundamental

12    principles of law."). In this hypothetical, the trainer's failure to give sexual harassment training

13    gives rise to the plaintiff's claim that Caceres's training fell below the standard of care

14    (assuming there is a duty, proper sexual harassment training is the standard of care, and Caceres

15    received all his training from this person). *See* Complaint, Doc. 1, p. 9. As far as liability is

16    concerned, it does not matter why the trainer failed to give the proper training. *Ex parte* contact

17    with the hypothetical trainer would not be proper.

18         The defendants further move that this court preclude certain testimony from former

19    maintenance employee Kevin Mills. Doc. 88, p. 7. The defendants assert that Mills "hired and

20    trained new maintenance workers," and they now "seek to preclude any testimony from Mr.

21    Mills regarding his role as supervisor, his hiring practices, and any training he did or did not

22    provide to maintenance employees." *Id*. The defendants do not allege that Mills hired or

23    trained or supervised *Caceres* specifically. Without more information, the court cannot opine

24    as to what testimony from Mills should be precluded.

25         The defendants further move for an order terminating the deposition Kevin Young

26    pursuant to Fed.R.Civ.P. 30(d)(3)(B) because the plaintiff's counsel was improperly attempting

27    to use the deposition to obtain the contact information for Blain Jacobson. Doc. 88, p. 8.

28                                              - 5 -

1   In her response, the plaintiff discusses the deposition of Young and explains that her

2   counsel terminated the deposition because counsel "only had a couple of additional questions"

3   and the defendants' counsel was "once again improperly instructing a witness not to answer a

4   question." Doc. 93, p. 6. The plaintiff does not express any desire to resume the Young

5   deposition. *Id*. Accordingly, the court finds the defendants' request for an order terminating

6   the deposition Kevin Young pursuant to Fed.R.Civ.P. 30(d)(3)(B) to be moot.

7   In their motion, "Defendants also seek their costs and fees pursuant to Fed. R. Civ. P.

8   37(a)(5)."

9   When a party files a motion to compel, Rule 37(a)(5)(A) instructs the court to make the

10  party "whose conduct necessitated the motion" pay the movant's reasonable expenses if the

11  motion is granted. Fed.R.Civ.P. Here, however, the court grants the motion in part. If that

12  happens, the Rule 37(a)(5)(C) explains that the court "may . . . apportion the reasonable

13  expenses for the motion." The court finds that each party should pay its own expenses as a

14  result of the motion.

15

16  IT IS ORDERED that the motion for protective order filed by the corporate defendants

17  on November 14, 2025 is Granted in Part. Doc. 88. *Ex parte* contact with one of the

18  defendants' former employees is prohibited where the acts or omissions of the former employee

19  gave rise to the underlying litigation.

20  DATED this 19th day of December, 2025.

21

22

23

24

25  _____

26  Honorable Michael A. Ambri
    United States Magistrate Judge

27

28                                      - 6 -